# UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE
## AT GREENEVILLE


KATHLEEN MAYNOR       )
                               )
v.                           )        NO. 2:07-CV-244
                               )
HARTFORD LIFE GROUP     )
INSURANCE COMPANY       )


## MEMORANDUM OPINION

This ERISA[1] matter is before the Court on cross motions for Judgment on the Record, [Docs. 9 and 11]. The plaintiff argues that the defendant[2] breached its fiduciary duties and committed procedural errors that denied her a full and fair review when it terminated her long term disability benefits. She also argues that this decision to terminate her benefits was arbitrary and capricious. The defendant, however, argues that it is not liable for the payment of benefits and that the plaintiff's claim for relief should be dismissed because it did not act arbitrarily or capriciously in denying the plaintiff benefits under the policy. The matter is ripe for decision.

---

[1] Employee Retirement Income Security Act of 1974.

[2] Defendant refers to Hartford Life Group Insurance Company, although the original insurance carrier was CNA.

1

# I.  BACKGROUND

The plaintiff worked as a material handler for Baxter International from March 27, 1989, until July 18, 2002.  She stopped working due to hip and lower back pain.  She applied for and was approved for short-term disability benefits from August 9, 2002, until November 15, 2002.  She then applied for long-term disability benefits pursuant to Baxter International's policy number SR-83079247 with CNA Group Life Insurance Company, subsequently assumed by the defendant, Hartford.  The defendant found the plaintiff to be disabled under the policy's "own occupation" provision and approved long-term disability benefits from January 1, 2003, through the end of the policy's twelve-month "own occupation" period.  On October 10, 2003, the defendant sent the plaintiff a letter stating that the plaintiff's file indicated that she had received Social Security disability benefits.  This letter referenced an earlier letter sent on January 30, 2003.  Both letters indicated that the plaintiff's long-term disability award would be reduced by certain amounts paid under the Social Security Act.  The October 10, 2003 letter and another letter dated November 6, 2003, informed the plaintiff of the amount she owed the defendant for overpayments.

In January 2004, the plaintiff underwent back surgery, and the defendant approved an extension of long-term disability benefits beyond the twelve-month period and into the "any occupation" policy provision period.  The defendant advised

2

the plaintiff on May 17, 2004, that it was reviewing her claim, and the defendant requested additional information from the plaintiff on this date and on June 2, 2004. The plaintiff provided the defendant with additional information relating to her surgery and follow-up care from Dr. Hamel.

The defendant then referred the file to its certified vocational case manager, Tracy Reason-Kerkhoff, for further review. Ms. Reason-Kerkhoff reviewed the plaintiff's file and Dr. Hamel's assessment, where he stated that the plaintiff was capable of performing full-time work. She also conducted a telephone interview with the plaintiff where the plaintiff reported that she completes personal hygiene tasks, basic meal preparation, and light household chores. Ms. Reason-Kerkhoff then notified the plaintiff on June 17, 2004, via letter, that she would no longer receive long-term disability benefits under the "any occupation" provision of the policy.

The plaintiff appealed this determination by letter dated September 29, 2004. In the letter, the plaintiff stated that she disagreed with the determination not only because she continued to have back problems, but also because the combined effect of other medical problems prevented her from working. In addition, she stated that she had been awarded Social Security disability benefits. On October 27, 2004, the plaintiff's treating physician, Dr. Kanwal, sent a letter to the defendant opining that the plaintiff had been disabled since 2002 due to chronic lower back pain. He

3

also stated that she suffered from hypertension, asthma, severe anxiety, depression, an underlying mood disorder, and the chronic low back pain with radiculopathy. He further opined, "It is a combination of all these illnesses that impair [the plaintiff's] functioning ability." The plaintiff also supplied the defendant with emergency room records for treatment for exacerbation of her chronic obstructive pulmonary disease ("COPD").

The defendant hired University Disability Consortium to conduct two medical reviews of the plaintiff's file. Dr. Robert Pick, a physician board-certified in orthopedics, and Dr. Irwin Greenberg, a physician board-certified in psychiatry, performed the reviews. Both physicians issued their reports on December 29, 2004. Doctor Pick's report states that he reviewed records from the following: (1) The Hartford; (2) CNA; (3) Dr. G.S. Kanwal—Coeborn Hospital Clinic; (4) Johnson City Medical Center; (5) Appalachian Neurosurgical Clinic—Dr. Steve Hamel and Dr. L. Brannon Thomas; (6) Dr. William C. Diebold; (7) Appalachian Orthopedic Associates; (8) Dr. Marshall; (9) Johnston Memorial Hospital;[3] and (10) sundry other documents.[4] The report quotes Dr. Kanwal's letter and states that Dr. Pick

---

[3]Doctor Pick reviewed these documents and issued an addendum to his report. His opinion remained the same despite the additional documents.

[4]No records from Dr. Kanwal are contained in the Administrative Record. It only contains the October 27, 2004 letter. The other medical records from other doctors are sparse, to say the least.

interviewed Dr. Kanwal via telephone regarding the plaintiff's condition. His report reflects that during their telephone conversation, Dr. Kanwal opined that the plaintiff could not work because of "multiple diagnoses and symptoms." Doctor Kanwal's objective findings for this conclusion include "high blood pressure, increased cholesterol, tenderness" and that the "right lower extremity knee jerk and ankle jerk are not there." The report then states that Dr. Kanwal stated that the plaintiff did not exhibit signs of muscle atrophy. Dr. Kanwal reportedly told Dr. Pick, when asked if the plaintiff could do "any kind of work," that "It depends upon how she feels." The report then states, "[Dr. Kanwal] again emphasized the fact that [the plaintiff] is unable to work because of 'back pain and asthma, nerves, anxiety, depression.'"

In the report, Dr. Pick mainly focused upon Dr. Hamel's records and assessment of the plaintiff regarding her back problems. According to Dr. Pick's report, Dr. Hamel's postoperative diagnosis reads, "No ruptured L5-S1 disc," although Dr. Hamel's report from the Johnson City Medical Center reads, "Central ruptured L5-S1 disc." Sometime after surgery, the defendant sent Dr. Hamel a Functional Assessment Tool form. The form asked him to check a box in response to the following question: "Do you feel that Kathleen M. Maynor is now capable of performing full time work, which includes primarily sitting with options to stand as needed for comfort and negligible lifting?" Dr. Hamel checked "yes."

5

Doctor Pick never mentioned that the plaintiff was awarded Social Security Disability benefits or discussed that award in any way. He concluded "to a reasonable degree of medical certainty, that as of 5/21/04 and continuing there is no objective documentation of an orthopedic and/or musculoskeletal condition or entity that prevents this woman from engaging in at least sedentary to light work activities." In explaining his conclusion, Dr. Pick summarized Dr. Hamel's assessment and notes. He then stated that "Dr. Kanwal's 10/27/04 medical report provided multiple diagnoses, but does not provide any description of physical examination, specifically no objective findings that would validate impairment from gainful employment." In the next paragraph, he states that "despite the fact that Dr. Kanwal emphasized that the claimant is unable to be gainfully employed, the medical records and documents fail to objectively document and substantiate an orthopedic condition or impairment that prevents this woman from being gainfully employed in at least a sedentary to light work capacity." Doctor Pick further reports, "From the records provided, as well as my conversation with Dr. Kanwal, it appears that the predominant issue at hand is claimant's subjective symptoms and complaints, on which Dr. Kanwal bases his opinions and recommendations for total impairment." Finally, Dr. Pick again asserts his conclusion that a "review of the medical records provided fails to reveal any objective orthopedic or musculoskeletal conditions or entities that would prevent this

6

woman from being gainfully employed, certainly in the sedentary to light work capacity."

Doctor Greenberg's report is entitled "Psychiatric Medical Record Review." He states that "considerations will be based on psychiatric issues; insofar as medical problems are concerned, the effects on the claimant's psychiatric status will be evaluated." He reviewed information from the following: (1) progress notes and reports by Dr. Diebold–psychiatrist; (2) Dr. Jim Marshall–orthopedist; (3) Dr. Kanwal–primary care physician; (4) Dr. Thomas–neurosurgeon; (5) Dr. Hamel–neurosurgeon; and (6) Dr. Hard–"in Dr. Hamel's office." His report, likewise, does not reflect that the plaintiff was awarded Social Security disability benefits and does not discuss that award in any way.

Doctor Greenberg's last comment regarding Dr. Diebold's information is dated January 13, 2003, and states, "Dr. Diebold filed a report stating that the claimant could not carry out the tasks of her job and thought that she had severe functional limitations which were 'most likely' to be permanent." Doctor Greenberg then continued to summarize the plaintiff's medical conditions, namely her back problems. In so doing, he quoted the October 27, 2004 letter from Dr. Kanwal. Doctor Greenberg then summarized his telephone conversation with Dr. Kanwal, regarding the plaintiff's psychiatric health. Doctor Kanwal reported to Dr. Greenberg

7

that when he saw the plaintiff on May 14, 2004, she had multiple medical problems and anxiety. The plaintiff was taking several medications and her memory was impaired. She reported how helpless and hopeless she felt and complained of sleep disturbance mainly because of pain. Doctor Kanwal also reported that when he saw the plaintiff on July 21, 2004, that her depression had improved significantly. On December 3, 2004, she reportedly was anxious and depressed, but not tearful, and had intact memory function. During the telephone conversation, Dr. Kanwal reportedly told Dr. Greenberg that the plaintiff had improved psychiatrically and was "OK 50% of the time"; however, her psychiatric symptoms increased when she had problems with asthma or blood pressure. Doctor Kanwal rated her functional capacities as good with the exception of her ability to deal with work stresses and maintain attention and concentration, which he rated as fair. Nonetheless, Dr. Kanwal opined that her functional capacities were found only at 50% of the time and that she was "unemployable" because of her psychiatric difficulties.

      Doctor Greenberg concluded that based upon Dr. Kanwal's description of the plaintiff in May 2004, that the plaintiff was significantly impaired. However, she considerably improved in July 2004. Therefore, he recommended the approval of benefits up to July 2004. After July, however, he stated that "there is no indication, in my opinion, that she would have functioned below fair level at any time after 7/04."

8

On February 7, 2005, the defendant sent the plaintiff a letter notifying her of the defendant's decision regarding her appeal. The defendant affirmed the determination that the plaintiff was entitled to benefits through July 21, 2004, the date after which Dr. Greenberg found that the plaintiff's mental issues would no longer preclude her from performing "any occupation." The letter stated that the policy provisions and the medical information stated in the June 17, 2004 letter, the letter first notifying her of the defendant's decision, would not be repeated.[5] The letter informed the plaintiff that in addition to a review of the information in the prior letter, the defendant also reviewed Dr. Kanwal's October 27, 2004 letter, "After Care Instructions" from Johnston Memorial Hospital, and reports from Dr. Greenberg and Dr. Pick. It did not state that it considered that she had been awarded Social Security disability benefits.

---

[5]That letter stated that "Disability" meant "Injury or Sickness causes physical or mental impairment to such a degree of severity that You are: 1. Continuously unable to engage in any occupation for which You are or become qualified by education, training or experience; and 2. Not working for wages in any occupation for which You are or become qualified by education, training or experience." Ms. Reason-Kerkhoff, the author of the letter, reviewed the plaintiff's job history, summarized their telephone interview, and mentioned "[y]ou are receiving social security benefits. In regard to specific medical information, the letter stated, "According to your physician, Dr. Steven Hamel, neurosurgeon on 04/13/04, you are able to perform primarily seated word that allows standing as needed for comfort and negligible lifting." It further stated that "the medical and vocational documentation in your file does not support that you remain disabled from any occupation." Then it informed the plaintiff of her right to appeal and to submit additional medical information not mentioned in the letter.

9

The letter stated that she stopped working because of lower back and bilateral lower extremity pain, for which she underwent surgery. On April 13, 2004, her surgeon, Dr. Hamel, opined that she was capable of performing full time work. Regarding plaintiff's other conditions it stated:

> Dr. Kanwal reported in his letter of October 27, 2004, that you have been disabled since 2002 as a result of chronic low back pain. He further reported that you have a history of hypertension, asthma, severe anxiety and depression, chronic low back pain with radiculopathy and the combination of these conditions impact your functioning ability. The records do not reflect significant findings on physical/clinical examinations that would support any of the mentioned conditions in an of themselves or in conjunction with each other would require functional restrictions/limitations that would render you incapable of performing any work activity. These conditions were pre-existing and you were capable of working with these conditions prior to your last date worked. You indicated in your initial claim report that you stopped work related to chronic low back pain and lower extremity complaints. There was no mention of any other medical conditions precluding you from working.

The letter then summarized Dr. Pick's report in two sentences, stating that he opined that "the medical records fail to reveal any objective orthopedic or musculoskeletal conditions or entities that would prevent gainful employment." It similarly summarized Dr. Greenberg's conclusion and Ms. Reason-Kerkhoff's conclusion and finally concluded that "the evidence does not support any medical condition(s) that

would preclude you from performing alternative work activity."

On December 22, 2006, the plaintiff's counsel submitted a second appeal of the termination of her benefits, via letter, and requested a copy of the plaintiff's claim file and all documents that the defendant relied upon in making its determination. On January 16, 2007, the defendant provided the plaintiff with what it claimed was the complete claim file and policy file and reported to plaintiff's counsel that the plaintiff's administrative remedies had been exhausted. The plaintiff then filed suit, and the case was removed to this Court on September 27, 2007.

## II.   ANALYSIS

As stated above, the plaintiff raises numerous issues in her motion for judgment on the administrative record. The defendant simply argues that its decision to deny benefits was not arbitrary and capricious. This Court will discuss the issues in turn.

### A.  BREACH OF FIDUCIARY DUTIES

The plaintiff sets forth the issue as follows: "When a plan participant, during an ERISA administrative appeal, desires to address the accuracy and reliability of the medical and vocational evidence developed by the plan fiduciary, and the fiduciary denies access to its hired medical and vocational consultants, and other requested information, has the fiduciary breached its duties under the policy?"

11

Section 1104 of ERISA states, in pertinent part:

. . . [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and–

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plain;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . . .

29 U.S.C. § 1104.

Section 1109(a) of ERISA states:

Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S. C. § 1109.

12

To prevail on a breach-of-fiduciary-duty claim under ERISA, a plaintiff must generally prove that the defendant not only breached its fiduciary duty but also caused harm by that breach. *Kuper v. Iovenko*, 66 F.3d 1447, 1459 (6th Cir. 1995). A causal connection between the alleged breach and the alleged harm is, thus, a necessary element of an ERISA-participant's breach-of-fiduciary-duty claim. Here, the plaintiff claims that the defendant breached its duty by "den[ying] access to its hired medical and vocational consultants, and other requested information." More specifically, the plaintiff argues that she was entitled to this information "during the pendency of her appeal and prior to the final disability determination." According to the plaintiff, that information includes: "(1) E-mail communications regarding her claim; (2) Examinations under oath (via telephone) of the vocational case manager, medical consultant Dr. Pick and medical consultant Dr. Greenberg; (3) The credentials of any of the consulting professionals; (4) Participation by telephone in the meetings having a bearing on her claims; (5) An explanation regarding why Hartford would not agree upon a mutually agreeable local physician to examine Mrs. Maynor; [and] (6) Claims manuals and/or internal instructions relating to the benefit determination."

It is worth noting that there is no indication in the record that the plaintiff asked for this information during the pendency of her appeal or prior to the final decision. Certain information was not requested until after the final decision.

13

Furthermore, the defendant is correct in that the plaintiff essentially raised this same argument in its Motion for Discovery, [Doc. 6]. The United States Magistrate Judge correctly denied the motion, and he referenced United States Magistrate Judge Shirley's Memorandum and Order in *Bradford v. Metropolitan Life Insurance Company*, No. 3:05-CV-240, 2006 WL 1006578 (E.D. Tenn. April 14, 2006). This Court will not, therefore, revisit the issue. However, to the extent that the plaintiff contends that her argument is somehow different in this context, this Court FINDS that the defendant did not breach its fiduciary duties. The plaintiff has not demonstrated that she is entitled to this information, but more importantly, she has failed to show a causal connection between the alleged breach and her denial of benefits. She merely asserts that because of the alleged withholding of information she "has been denied due process, and consequently, a full and fair review of her claim." This conclusion, without more, is not sufficient to establish that the defendant breached its fiduciary duties. Accordingly, the plaintiff's motion in this regard is **DENIED**.

### B. FULL AND FAIR REVIEW PURSUANT TO § 1133

Second, the plaintiff argues that she was denied a full and fair review. Section 1133 of ERISA provides:

In accordance with regulations of the Secretary, every

14

employee benefits plan shall-

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133 (2007) (emphasis added) ("§ 1133"). The "essential purpose" of the statute is twofold: (1) to notify the claimant of the specific reasons for a claim denial, and (2) to provide the claimant an opportunity to have that decision reviewed by the fiduciary. *See Moore v. LaFayette Life Ins. Co.*, 458 F.3d 416, 436 (6th Cir. 2006) (citing *Kent v. United Omaha Life Ins. Co.*, 96 F.3d 803, 807 (6th Cir.1996)). This Court reviews *de novo* the legal question of whether the procedure employed by a plan administrator in terminating benefits meets the requirements of § 1133. *McCartha v. National City Corp.*, 419 F.3d 437, 444 (6th Cir. 2005) (citing *Kent*, 96 F.3d at 806). The Sixth Circuit applies a "substantial compliance" test to determine whether § 1133's notice requirements have been met. *See Moore*, 458 F.3d at 436. The test "considers all communications between an administrator and plan participant to determine whether the information provided was sufficient under the circumstances."

*Id.* (citing cases). If the communications between the administrator and participant as a whole fulfill the twin purposes of § 1133, the administrator's decision will be upheld even where the "particular communication does not meet those requirements." *Id.* (quoting *Kent*, 96 F.3d at 807).

Code of Federal Regulation section 2560.503-1 is an ERISA regulation that implements 29 U.S.C. § 1133. More specifically, section 2560.503-1(h)(2)(iii) implements the "full and fair review" requirement of § 1133 by providing that the claims procedure of a benefits plan must provide a claimant, "upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits." Section 2560.503-1(j)(3) requires the plan administrator to notify the claimant that the "claimant is to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits. Whether a document, record, or other information is relevant to a claim for benefits shall be determined by reference to paragraph (m)(8) of this section." *Id.* § 2560.503-1(j)(3). Furthermore, section 2560.503-1(i)(5) states, "In the case of an adverse benefit determination on review, the plan administrator shall provide such access to, and copies of, documents, records, and other information described in paragraphs (j)(3), (j)(4), and (j)(5) of this section as is appropriate." *Id.* § 2560.503(i)(5). In addition,

16

section 2560.503-1(g) requires that an ERISA administrator provide a claimant with written notice of any adverse benefit determination, including "[t]he specific reason or reasons for the adverse determination" and "[a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary." 29 C.F.R. § 2560.503-1(g) (2007).

This Court discerns that the plaintiff does not argue that the notice requirements under subsection one were not met. Instead, the plaintiff focuses upon the alleged denial of access to information, which implicates subsection two. This argument is similar to her breach-of-fiduciary-duty argument. Likewise, the plaintiff does not offer any specific allegations on how this denial resulted in a procedurally deficient appellate review of her claim by the defendant. The plaintiff merely asserts, in a conclusory fashion, that the denial of information prevented her from addressing the accuracy and reliability of the evidence relied upon by the defendant prior to the final determination. Because she could not do this, she contends the review was not full or fair.

The plaintiff correctly cites *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 461 (6th Cir. 2003), for the proposition that "the persistent core requirements of review intended to be full and fair include knowing what evidence the

decision-maker relied upon, having an opportunity to address the accuracy and reliability of that evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision." *Id.* (quoting *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 689 (7th Cir.1992)). Her argument is couched in terms of being denied access to information after the final determination. If this information had been sought and then denied during the pendency of her appeal, then this would be a close case. However, the plaintiff did not seek this information at that time, and she was informed that she could submit any information for the defendants to consider prior to its final determination. Thus, in terms of her procedural argument, this Court cannot find that the defendant denied plaintiff a full and fair review by allegedly denying her access to information after the final determination which she did not seek.

In addition, the plaintiff argues that because of this denial of access to the records, she could not get important information into the record. Again, this Court notes that the plaintiff did not seek this information during the pendency of her appeal. Thus, her argument that the denial prevented her from getting information into the record is without merit.

## C. ARBITRARY AND CAPRICIOUS

The plaintiff also argues that the defendant's decision was arbitrary and

18

capricious. The defendant argues the contrary and asserts that its decision was well-reasoned.

### 1. Standard of Review

When, as is the case here, the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits, this Court will reverse the administrator's decision only if it is arbitrary or capricious. *Gismondi v. United Techs. Corp.*, 408 F.3d 295, 298 (6th Cir. 2005). Under this standard, this Court upholds the administrator's decision "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006) (internal quotation marks omitted), *aff'd*, 128 S. Ct. 2343 (2008) (upholding decision solely regarding conflict-of-interest issues; certiorari only granted as to that issue). Although this standard is deferential, it "is no mere formality." *Id*. "The arbitrary-and-capricious standard . . . does not require [this Court] merely to rubber stamp the administrator's decision." *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004) (citation omitted). Rather, application of the standard requires this Court "to review 'the quality and quantity of the medical evidence and the opinions on both sides of the issues.'" *Glenn*, 461 F.3d at 666 (quoting *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003)).

When determining whether a decision was arbitrary or capricious, this

Court also factors in whether there "existe[d][ ] a conflict of interest," whether "the plan administrator[ ] fail[ed] to give consideration to the Social Security Administration's determination that [the applicant] was totally disabled," *id.*, and whether the plan administrator based its decision to deny benefits on a file review as opposed to conducting a physical examination of the applicant. *Calvert v. Firstar Fin.*, Inc., 409 F.3d 286, 295 (6th Cir. 2005). Such findings do not change the standard of review, but they do factor into the analysis when determining whether the administrator's decision was arbitrary or capricious. *Id.* (conflict-of-interest context and file-review context); *Glenn*, 461 F.3d at 669 (failure to consider the SSA's determination of disability).

## 2. Conflict of Interest

The plaintiff argues that the defendant both funds and administers the plan at issue here. "This dual function creates an apparent conflict of interest." *Glenn*, 461 F.3d at 666. As stated above, a conflict of interest is a factor in determining whether a decision was arbitrary or capricious. *Id.* Thus, this Court will consider this conflict in making its determination. In so doing, this Court notes that the plaintiff merely points out that the conflict exists and offers nothing more. Standing alone, this conflict is not enough to establish that the defendant acted arbitrarily or capriciously.

20

### 3. No Independent Medical Exam

The plaintiff also contends that the defendant acted arbitrarily and capriciously because it failed to have the plaintiff physically examined and only conducted a file review. There is "nothing inherently objectionable about a file review in the context of a benefits determination." *Calvert*, 409 F.3d at 296. However, "the failure to conduct a physical examination--especially where the right to do so is specifically reserved in the plan--may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination." *Id.* at 295. The policy at issue here states, "At Our[, the defendant's,] expense, We have the right to have You examined as often as reasonably necessary while the claim continues. Failure to comply with this examination may deny, suspend or terminate benefits, unless We agree You have a valid and acceptable reason for not complying." In addition, "when a plan administrator's explanation is based on the work of a doctor in its employ, [this Court] must view the explanation with some skepticism." *Moon v. Unum Provident Corp.*, 405 F.3d 373, 381-82 (6th Cir. 2005). The fact that the plaintiff was not physically examined by an independent doctor, in and of itself, does not show that the defendant acted arbitrarily or capriciously. Nonetheless, for the reasons stated in subsection five below, this Court doubts the thoroughness and accuracy of the file review by the physicians employed by the defendant.

21

### 4. Exclusion of Reports by Hartford's Reviewers

Before discussing the problems with the reviewers' reports, this Court must address whether the reports University Disability Consortium may even be considered. The plaintiff argues that they should not be considered because they "are based upon information gathered in violation of [the plan's] privacy policy." The policy states that the defendant shares personal information with "nonaffiliated third parties. . . without obtaining the covered person's permission." Then the policy provides examples of such third parties. These parties include "Claim Service and Administrators engaged by us to adjust, administer, service or process claims." The University Disability Consortium consultants fall into this category. Thus, their reports will be considered.

### 5. Problems with Reviewers' Reports

When assessing a non-treating physician's opinion, this Court may consider several factors, including: (1) whether the reviewing physician has a conflict of interest, *Moon*, 405 F.3d at 381-82; (2) whether the administrator decided that the physician should conduct a file review rather than a physical exam, particularly when it has the right to require a physical, *Calvert*, 409 F.3d at 295; and (3) whether the non-treating physician's conclusion makes a "critical credibility determination[ ] regarding a claimant's medical history and symptomology" without observing the

22

claimant, *Id*. at 297.

This Court has already addressed the second factor under subsection three and will not comment on that factor further. Regarding the first factor, the plaintiff argues that the decision was arbitrary and capricious because the reviewers were biased–*i.e.*, had a conflict of interest. She cites several cases, not just from this circuit, in which Hartford was involved and used consultants from University Disability Consortium. She offers statistics from these cases and "a more recent Westlaw search" to support her contention that the consultants were biased. As stated in subsection three above, because the consultants were employed by the defendant as administrator, this Court will view the consultants' explanations with some skepticism.

Regarding the third factor, Dr. Pick stated in his report that "the predominant issue at hand is the claimant's subjective symptoms and complaints, on which Dr. Kanwal bases his opinions and recommendations for total impairment." Although Dr. Pick referenced some objective medical records regarding the problems with plaintiff's back, he seems to be making a credibility determination regarding the remainder of plaintiff's symptoms although he never physically examined the plaintiff. A review of Dr. Greenberg's report does not reveal statements clearly making a credibility determination.

23

Notwithstanding these three factors, the plaintiff alleges other problems with the reviewers' reports. First, the plaintiff argues that the reviewers, including Ms. Reason-Kerkhoff, did not consider the Social Security Administration's decision to award her disability benefits, rendering the defendant's decision arbitrary and capricious. The defendant states that the decision is not relevant because it was rendered nearly one year prior to Dr. Pick and Dr. Greenberg's review. This argument is without merit considering the plaintiff is claiming that she is entitled to benefits because she is totally disabled from the same conditions for which she was awarded Social Security disability benefits. Additionally, even though this determination was made at an earlier time, there is nothing in the record to indicate that those benefits have been stopped because the plaintiff is no longer totally disabled.

The defendant also states that the policy "charges [the plaintiff] with the responsibility to provide adequate proof of loss," and letters sent to the plaintiff state that it is her responsibility to provide information to support her appeal. Thus, the defendant claims that it was the plaintiff's responsibility to get the full decision of the Social Security Administration into the administrative record for consideration, not just the "Notice of Award," which was supplied.[1]

_____

[1] The plaintiff attempted to supplement the record with this decision; however, the defendant moved to strike, and the United States Magistrate Judge correctly granted the motion.

24

The policy states several pieces of information that must be supplied at the plaintiff's expense as "proof of disability." It does not list the decision of the Social Security Administration awarding disability benefits. It does, however, list "Objective medical findings." These findings "include but are not limited to tests, procedures, or clinical examinations standardly accepted in the practice of medicine, for Your disabling condition(s)." In a different section, the policy states, "You will be required to provide a signed authorization for Us to obtain and release all reasonably necessary medical, financial or other non-medical information which support Your Disability claim. Failure to submit this information may deny, suspend or terminate Your benefits." It further states that the plaintiff must inform the defendant if she has applied for Social Security disability benefits, and she must inform the defendant if she is awarded such benefits. The plaintiff notified the defendant of the application and award, and the defendant received a "Notice of Award." In addition, the defendant sent the plaintiff two letters stating that she was to reimburse it for a particular amount because of the Social Security benefits award. There is no indication from the record that this amount was not paid.

The defendant does not argue that the full decision is an objective medical finding. This Court cannot see how such a decision would fall into that category. Thus, the policy does not place an affirmative duty onto the plaintiff to

place that particular piece of information into the record. She apparently supplied the information the policy specifically required. Nonetheless, the defendant did send letters to the plaintiff informing her to submit materials for review. Despite this fact, the Sixth Circuit has held "an ERISA plan administrator's failure to address the Social Security Administration's finding that the claimant was 'totally disabled' is yet another factor that can render the denial of further long-term disability benefits arbitrary and capricious." Glenn, 461 F.3d at 669. The defendant is correct, however, that the "plan administrator's decision cannot be considered arbitrary and capricious solely because the Social Security Administration reached a different decision." *Bennett v. Kemper Nat'l Services, Inc.*, 514 F.3d 547, 554 (6th Cir. 2008). While the defendant is technically correct, this Court must still consider whether the plan administrator "(1) encourages the applicant to apply for Social Security disability payments; (2) financially benefits from the applicant's receipt of Social Security; and then (3) fails to explain why it is taking a position different from the SSA on the question of disability . . ." *Id.* (citing *Glenn*, 461 F.3d at 669). These factors weigh in favor of a finding that the decision was arbitrary and capricious. *Id.*

In the present case, as stated above, the policy requires the plaintiff to notify the defendant of the application for and approval of benefits. Moreover, the defendant's "Group Long Term Disability Insurance Administration Manual," states

in the section titled "Social Security and Other Disability Benefits," that "[w]hen it is apparent that the employee is entitled to Workers' Compensation, statutory or other benefits, he or she should make prompt application for them." Thus, the plaintiff was encouraged to apply. Further, the defendant benefitted from the applicant's receipt of the benefits as evidenced by the letters demanding payment from the plaintiff because of the offset. As stated above, nothing in the record indicates that the plaintiff failed to reimburse the defendant. Finally, the defendant merely mentioned that the plaintiff received this award in its June 17, 2004 denial letter, which was authored by Ms. Reason-Kerkhoff. However, Dr. Pick and Dr. Greenberg made no mention of the award in their reports. *See Id.* In the defendant's February 7, 2005 denial letter, there was no mention of the benefits, much less an explanation as to its different decision. *See Id.* Accordingly, these factors weigh in favor of a finding that the decision was arbitrary and capricious.

Second, the plaintiff argues that the reviewers did not have complete information upon which to base their opinions. Specifically, the plaintiff complains that they did not have the medical records and Functional Assessment Tool forms from Dr. Diebold and Dr. Kanwal. Again, the defendant argues that Dr. Pick and Dr. Greenberg considered the medical records and conversations with Dr. Kanwal. Their reports actually state that they considered records from both of these doctors.

However, these records are not contained in the administrative record. In addition, their reports do not seem to summarize such records. Both reports discuss Dr. Kanwal's letter and the doctors' conversations with him. Dr. Greenberg's report summarizes progress notes and reports from Dr. Diebold.

"The provision of an incomplete administrative record by a plan administrator to a reviewer for the purpose of assessing benefits or coverage is considered arbitrary and capricious unless all relevant medical records relating to a claim are provided for review." *Smith v. Health Services of Coshocton*, 314 Fed. Appx. 848, 861 (6th Cir. 2009) (citing *Spangler v. Lockheed Martin Energy Sys., Inc.*, 313 F.3d 356, 362 (6th Cir. 2002)). The defendant does not specifically argue that the plaintiff had the burden of placing these records into the Administrative Record and failed to do so. Instead, the defendant's Reply seems to indicate that all of these records were supplied. Of course, the plaintiff asserts the contrary. From the Administrative Record, this Court cannot determine whether those records were actually supplied. Because of this uncertainty, this Court cannot determine whether the reviewers were supplied with a complete record. Thus, it cannot determine whether the decision to rely on a reviewer's report, which may not have been based upon all of the medical evidence, was arbitrary and capricious. *See Likas v. Life Ins. Co. of North America*, 222 Fed. Appx. 481, 488 (6th Cir. 2007) (remanding the case

to the district court to determine precisely what the reviewer actually reviewed in order to determine whether the district correctly granted the plan administrator's motion for judgment on the administrative record).  Likewise, this Court cannot determine whether the reviewers and, thus, the plan administrator "cherry-picked" from the records, which would have a tendency to show that the decision was arbitrary and capricious.  *See Spangler*, 313 F.3d at 362 (holding that a plan administrator's decision was arbitrary and capricious because it "cherry-picked" the claimant's file "in hopes of obtaining a favorable report from the vocational consultant as to [the claimant's] ability to work" and concluding that the administrator "should have provided the reviewer] with all of the medical records relevant to the request for benefits").

Third, the plaintiff argues that the reviewers' decision and, thus, the defendant's decision, was arbitrary and capricious because they ignored the treating physician's opinion.  It is well-established that the defendant is not required to defer to the opinions of treating physicians, *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003); it is equally clear that a plan administrator may not disregard those opinions, *see Evans*, 434 F.3d at 877.  Dr. Kanwal reportedly stated during the telephone conversation with Dr. Pick that the plaintiff could return to work "depend[ing] on how she feels."  Despite this one comment, the rest of his statements

during the conversation and the content of his letter seemed to opine that the plaintiff could not be gainfully employed even in a sedentary capacity. Dr. Kanwal told Dr. Greenberg, when asked about the plaintiff's mental functioning, that the plaintiff was "OK 50% of the time," but her psychiatric symptoms increased when she had trouble with her asthma or blood pressure. Again, despite this one comment, considering his letter and statements as a whole, he considered the plaintiff incapable of being employed. Based on these comments, the reviewers did not necessarily ignore Dr. Kanwal's position, but it is also somewhat unclear whether they fully considered his opinion. *See McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 170-71 (6th Cir. 2003) ("The mere possibility that a participant in an ERISA plan might be able to return to some type of gainful employment, in light of overwhelming evidence to the contrary, is an insufficient basis upon which to support a plan administrator's decision to deny that participant's claim for LTD benefits."). This fact, in and of itself, does not render the defendant's decision arbitrary and capricious, but it is a factor this Court considers.

Finally, the plaintiff argues that the reviewers' reports are insufficient because they do not consider the plaintiff's combined medical conditions and medications. Because these were not considered, she argues, the defendant's decision is arbitrary and capricious. The defendant does not address this issue. This Court

30

discerns that Hartford may argue that the plaintiff did not initially seek long-term disability benefits due to a combination of medical conditions and the effects of medication, but due to her back problems only. This may be the case; however, the plaintiff clearly asserted disability due to all of these things in her September 29, 2004 letter appealing the initial decision. In addition, Dr. Kanwal's letter stated that the plaintiff was disabled due to a combination of conditions. Thus, the plaintiff raised the issue, placing the defendant on notice, and the defendant had ample time to consider the issue.

The defendant chose, however, to hire two physicians to review the file, an orthopedist and a psychiatrist. Their reports cursorily reference the plaintiff's other conditions via quotations to Dr. Kanwal's letter. Nonetheless, Dr. Pick only evaluated the plaintiff's file to determine whether there were any "orthopedic and/or musculoskeletal conditions or entities that would prevent this woman[, the plaintiff,] from being gainfully employed." Again, he mentions the other conditions; however, every time he states his conclusion, he couches in terms of orthopedic or musculoskeletal conditions or entities. Likewise, Dr. Greenberg's report stated that his considerations would only be based upon "psychiatric issues." He further stated that "insofar as medical problems are concerned, the effects on the claimant's psychiatric status will be evaluated." No reviewer appears to have considered all of

31

the plaintiff's medical conditions in combination.

This Court notes that the February 7, 2005 denial letter stated, "The records do not reflect significant findings on physical/clinical examinations that would support any of the mentioned conditions in and of themselves and/or in conjunction with each other would require functional restrictions/limitations that would render you incapable of performing any work activity." It then stated that the conditions were pre-existing and that the plaintiff was capable of performing work with these conditions prior to her last date worked. Although this may be true, the only physician in the record who considered the problems in combination with each other opined that she was totally disabled. Without another physician considering all of the conditions in conjunction and offering an opinion different from Dr. Kanwal's, this Court cannot find that the plan administrator's decision was a result of deliberate and principled reasoning, supported by substantial evidence.

## III.  CONCLUSION

For the reasons stated above, this Court concludes that the plaintiff's motion for judgment on the administrative record is **DENIED IN PART AND GRANTED IN PART**, [Doc. 11]. Regarding her fiduciary duty and section 1133 claim, the motion is DENIED. Regarding her arbitrary and capricious claim, the motion is GRANTED. Accordingly, the defendant's motion for judgment on the

32

administrative record is DENIED. [Doc. 9]. In sum, none of the above referenced factors alone is dispositive as to whether the defendant's decision was arbitrary or capricious. However, as a whole, they demonstrate that the defendant did not engage in deliberate and principled reasoning, especially considering that the plaintiff's conditions were not fully considered in conjunction with each other. In addition, this Court was unable to determine whether the reviewers were supplied with all of the plaintiff's essential medical information in order to render a reasoned and complete report.

As for the appropriate remedy, "[w]here the problem is with the integrity of the plan's decision-making process, rather than that a claimant was denied benefits to which [she] was clearly entitled," remand to the plan administrator is the appropriate remedy.'" *Elliot v. Metro. Life Ins. Co.*, 473 F.3d 613, 622 (6th Cir. 2006) (emphasis added). It does not appear to this Court that the plaintiff is clearly entitled to benefits. Accordingly, this Court REMANDS the case in order that the defendant may provide a full and fair review. *See, e.g., Elliot*, 473 F.3d at 622-23.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE